**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | XTL, INC., et al. | : | Chapter 11 |
| | | : | |
| | Debtors | : | Bky. No. 19-14844 ELF |
| | | : | |
| | | : | JOINTLY ADMINISTERED |

# O R D E R

**AND NOW**, upon consideration of the Debtors' Motion for Reconsideration of the Order Denying the Debtors' Application to Employ D. Rick Whitesides, MAI, SAR as Appraiser.("the Motion to Reconsider") (Doc. # 223) and the Motion to Expedite Consideration of the Motion to Reconsider ("the Motion to Expedite) (Doc. # 224);

**AND**, the purpose of a motion for reconsideration being to correct manifest errors of law or fact or to present newly discovered evidence. E.g., Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985), cert. denied, 476 U.S. 1171, 106 S.Ct. 2895 (1986);

**AND**, it being an accepted legal principle that "courts should grant such motions sparingly." E.g., Cohen v. Prudential Ins. Co., 2010 WL 1257659, at *3 (E.D. Pa. Mar. 25, 2010); Griffin-El v. Beard, 2009 WL 1229599, at *3 (E.D. Pa. Apr. 30, 2009);[1]

---

[1] "Motions for . . . reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court." Ciena Corp. v. Corvis Corp., 352 F. Supp.2d 526, 527 (D. Del. 2005). A motion for reconsideration may not be used to give a litigant a "second bite at the apple." See Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995). A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one. A motion for reconsideration "should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990) (quoted in Bhatnagar, 52 F.3d at 1231). Therefore, it is "improper ... to ask the Court to rethink what [it] had already thought through – rightly or wrongly." Glendon Energy Co. v. Bor. of Glendon, 836 F. Supp.

(continued...)

**AND**, the Motion to Reconsider failing to present:

(a) arguments not previously considered by the court;

(b) any persuasive argument that the court previously committed a manifest error of law;

or

(c) any newly discovered evidence.

It is therefore **ORDERED** that the Motion to Reconsider and the Motion to Expedite are both **DENIED**.[2]

---

[1](...continued)
1109, 1122 (E.D. Pa. 1993).

PBI Performance Products, Inc. v. NorFab Corp., 514 F. Supp. 2d 732, 743-44 (E.D. Pa. 2007); accord, In re Kuhar, 2007 WL 2245912, at *2 (Bankr. E.D. Pa. Aug. 1, 2007).

[2]   In the Motion to Reconsider, the Debtors make two (2) major points.

First, they suggest that the court erred in stating in the endnote to the Order that no party sought a postponement of the sheriff's sale. The Debtors attach documentation showing that Ootzie made such an attempt two days prior to the sale. The Debtors also note that the transcript of the sheriff's sale (submitted at the hearing) shows that the fifth lien holder, Indiana Bridge, Inc., did attempt to nullify the sale under §626.81 immediately following the sale's conclusion. An Iowa judge conducted an impromptu hearing on Indiana Bridge's post-sale postponement request, and denied the request based on a determination that the sale price was not "grossly inadequate".

One difficulty with this argument, however, is that the Debtor offers no explanation why evidence of Ootzie's attempt to postpone the sale was not offered at the hearing on the application to employ the appraiser. As a result, it is not properly considered on a motion for reconsideration. See. e.g., 12 Moore's Federal Practice - Civil §59.30 (Lexis 2019) (to support a motion for reconsideration the new evidence must have become available only after judgment, with the exercise of due diligence, and be both admissible and probative); accord  Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure Civ. §2808  (3d ed. West 2019).

In addition, any factual misstatement was immaterial to the denial of the application to employ the appraiser. To be clear, the Endnote merely stated that the Debtor — not any party —failed to invoke its remedies to postpone or set aside the sale under Iowa Code Ann §626.81. The Debtors do not dispute that assertion. The statement was descriptive only and not part of the legal reasoning employed in the ruling. My conclusion that appraisal testimony was irrelevant turned on an analysis and structure of the relevant Iowa statutes and the existence of competitive bidding at the sheriff's sale and was not dependent on the invocation or non-invocation of the remedy in Iowa Code Ann §626.81.

(continued...)

---

²(...continued)

Second, the Debtors dispute that the bidding at the sheriff's sale was "competitive." They state, with no citation to any authority, that "Iowa practice requires a junior lienholder to bid the amounts of all prior liens in order to clear title." The Debtors also describe the motivations of the two parties that bid on the Property: the third lien holder, J.R. Barger ("Barger") and Boyd Jones. "Barger's sole interest at the sale was in seeing to it that the bidding went high enough to generate proceeds sufficient to pay its lien (and the two liens senior to it) in full. Boyd Jones' sole interest at the Sheriff's Sale was to gain title to the property free and clear of the senior liens (and of the junior lien of Indiana Bridge, Inc. ["Indiana Bridge"]), at the lowest possible price."

If the Debtors' description of the parties' motivations at the Iowa sheriff's sale is accurate (an assumption not established at the hearing), they have a plausible theory that the bidding parties' respective motivations at the sheriff's sale could have lowered the sales price at the sheriff's sale. But the Debtors' theory regarding those motivations is not supported by any evidence. Further, there are other possible explanations for the bidders' conduct. For example, the Debtors' theory does not explain why Boyd Jones' initial bid was less than the amount of the prior liens. Why would Boyd Jones bid less than the outstanding amount of the liens if its interest was to ensure that it took the property clear of those liens? If Barger's lien was protected by Boyd Jones' lower, initial bid, why did Barger (holding a senior lien) go to the trouble to place any bid, much less two bids. If anything, the record suggests that Barger may have hoped that Boyd Jones would drop out of the bidding and it would prevail. If so, that strikes me as competitive bidding. The point here is that despite the existence of four bids at the sheriff's sale, the Debtors are asking me to conclude that there was no competitive bidding based on a theory that needed to be supported by evidence and that should have been presented at the initial hearing.

Further, regardless of the true nature of Barger's and Boyd Jones' motivations for bidding, the Debtors have not provided sufficient reasons to justify the imposition of an equitable remedy to circumvent the straightforward application of Iowa Code Ann §626.81. Even though the sale dynamics were such that the bidders may have had no incentive to bid close the conventional "fair market value" of the property, that does not mean that there was no competitive bidding. Just as the Supreme Court observed in a the related context of evaluating foreclosure sales prices in the fraudulent transfer context, "[m]arket value cannot be the criterion . . . ." BFP v. Resolution Tr. Corp., 114 S. Ct. 1757, 1761–62 (1994). Iowa Code Ann §626.81 provides the procedures to be followed in this exact situation, and the facts presented here do not justify an equitable deviation.

In short, with the record I have, I remain convinced that the bidding was sufficiently competitive such that the Iowa courts would not exercise any equitable powers they may have to supplement the procedures in Iowa Code Ann. §626.83 to grant Ootzie or the Debtor a credit against Boyd Jones judgment based on appraisal testimony regarding the fair market value of the property sold at the sheriff's sale. To the extent the Debtors have developed theories to establish that there was no competitive bidding, these theories should have been supported by an evidentiary record at the initial hearing. The Motion to Reconsider is too little, too late.

**Date: January 22, 2020**

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE